CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

11/30/2020
JULIA C. DUDLEY, CLERK
BY:   s/ A. Little
        DEPUTY CLERK

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
## LYNCHBURG DIVISION

MARK TYREE,

*Plaintiff*,

v.

WAL-MART STORES EAST, INC., *et al.*,

*Defendants.*

CASE NO. 6:19cv00009

MEMORANDUM OPINION

JUDGE NORMAN K. MOON

Plaintiff Mark Tyree was injured while trying on shoes in a Walmart in Lynchburg, Virginia. He was sitting on a bench in the shoe department trying on shoes when the bench collapsed. The question is whether Tyree presented evidence from which a reasonable jury could find that Walmart had actual or constructive knowledge of a dangerous condition. For the reasons set forth below, Defendants' motion for summary judgment will be granted and Defendants will be awarded summary judgment.

### Background

Mark Tyree is 54 years old and a resident of Lynchburg. Tyree had worked at a lumberyard for over 30 years—most recently, as a yard foreman. That job that involved heavy manual labor, including loading and unloading train cars and tractor-trailers, building "framing packages," and conducting the inventory of the lumber yard. M. Tyree Dep. at 6, 11–15 (transcript found at Dkts. 20-1, 20-2 and 20-3).

The incident at Walmart took place on April 2, 2017. That day, Tyree and his wife went to Walmart so he could try on shoes for the gym. *Id.* at 47. Tyree and his wife went directly to the shoe department, and he began trying on shoes. *Id.* at 54.

There are two videos of the incident from Walmart's security cameras, although the views of the bench where Tyree was sitting are partially obstructed in both. Tyree and his wife entered the shoe department at 2:54:00 p.m. Tyree was pushing a shopping cart alongside his wife, and they each began looking at shoes on racks. Dkt. 20-6 ("Videos") at 2:58:15. Tyree's wife sat on a small bench that was positioned at the far end of one of the racks of shoes, alongside an aisle. Tyree continued to browse until 3:00:40, when he sat down on the bench next to his wife, where they both sat for about 30 seconds. He then got up to pick out another pair of shoes and sat back down next to his wife at 3:02:25. They sat together on the bench for about two minutes until Tyree's wife stood up and began getting shoes for him. Videos at 3:04:20. Tyree remained seated on the bench trying on shoes for another four minutes, when the bench collapsed. Videos at 3:08:20. Tyree's wife and several other customers ran over to help Tyree where he remained sitting on the ground.

Tyree testified several times that he did not notice anything wrong with the bench: "If it was something wrong with it, I would have never sit [sic] on it. Nothing was wrong with it." M. Tyree Dep. at 58. Indeed, he testified that when he was sitting on the bench, "[i]t didn't give me no indication of nothing giving … before I sat there, I didn't see nothing manufactured wrong with it. And I sat there and it broke. It broke in three or four places." *Id.* at 55; *see also id.* at 67 (testifying that when he sat down, "I did not notice nothing wrong with it.").

Tyree's wife also testified that when she sat on the bench, she did not have any reason to think there was a concern about the safety or integrity of the bench. Dkt. 20-5 ("A. Tyree Dep.") at 20 (Q. "Before you sat on the bench, was there anything to cause you concern for your safety or concern about the integrity of the bench or anything? A. No, sir … I didn't look at it."); *id.* at 23 (stating that she "didn't notice anything" like whether the bench was "sagging").

2

It appears that the bench was made from composite wood or "pressed wood," but not particleboard. M. Tyree Dep. at 67. After the bench collapsed, Tyree's wife took a picture of it. The photo shows the bench is split down the middle and the "legs" on either side of the bench are bowed outward. Dkt. 20-4.

One Walmart employee, Ms. Leffler, provided relevant testimony in her deposition. Leffler worked at Walmart for 13 years. She was a "jewelry associate and shoe floor associate" at this Walmart on the date of this incident. Dkt. 22-2 ("Leffler Dep.") at 6. Her responsibilities in the shoe department were to "pick up, make sure nothing is on the floor," "look for spills," and to "zone," i.e., to "make sure everything looks good" and that nothing is "out of place." *Id.* at 7. While she recalled "computer-based learning" programs at Walmart geared toward customer safety, she did not recall any such programs, policies or handbooks that addressed the safety of benches or tables. *Id.* at 8–9.

Leffler filled out a "witness statement" following the incident at management's request. In it she wrote: "As I was making my way thru shoes this morning zoning & picking up, I ran my hand across the bench b/c it didn't look exactly right, I put a small amount of pressure on it and everything was fine. I thought it was a shadow across it." Dkt. 22-2 at 32. Leffler's deposition testimony mirrored her prior statement and her actions earlier that day, affirming that "[the bench] looked like it had a shadow across it or dirt or something on it." Leffler Dep. at 13. She "rubbed [her] hand across" the bench then pressed down "a little hard," but "did not sit on it." *Id.* at 15. When asked why she did that, Leffler testified: "I don't want somebody to sit on something and stand up and maybe if it was dirt, I don't want somebody to be dirty," or, "if it was a shadow, I wanted to make sure it was a shadow." *Id.* However, Leffler testified that it "didn't even cross [her] mind" whether the bench was "structurally sound." *Id.* at 16. Leffler "didn't think it looked

strange enough to do anything about." *Id.* at 17. This was, to her knowledge, the first time a bench collapsed. *Id.* at 17–18.

Plaintiff's counsel also deposed Michael Hildreth, who is co-manager of the Walmart. He similarly testified that while they take routine computer-based learning modules about safety, he did not remember ever having any specific training about the safety of benches, seats, or tables. Dkt. 22-3 ("Hildreth Dep.") at 7. But as a general matter, the policy is, "[i]f you see something unsafe, correct it on the spot." *Id.* at 8.

Hildreth was one of the Walmart employees who came onto the scene after Tyree fell to the ground. *Id.* at 11. Hildreth recounted that he had talked with Leffler that day and that he had asked her to fill out a witness statement. *Id.* at 12. Hildreth recalled that Leffler told him that "it looked like there was some type of shadow on [the bench], but she checked it out and nothing seemed unsafe about the bench." *Id.* at 12–13. Hildreth was not aware of any other problems with these benches in the store, and that he did not have any information to conclude that this particular bench was unsafe. *Id.* at 13.

The videos in evidence include two hours of footage surrounding the incident. Those videos show three other customers trying on shoes on the same bench, without incident, during the 30 minutes before Tyree sat on the bench. *See* Videos at 2:41:00, 2:32:00 and 2:08:15.

Tyree sat or stood at that spot where he had fallen for approximately 20 minutes with his wife, other customers and several Walmart employees, until he ultimately was able to slowly walk out. Videos at 3:26:30. Tyree testified that he suffered significant injuries as a result of this fall. M. Tyree Dep. at 95. The injury to his tailbone causes numbness in his leg, *Id.* at 98. He testified that he has not been able to work at the lumberyard since the incident. *Id.* at 16.

Tyree sued various Walmart entities in the Circuit Court for the City of Lynchburg. His lawsuit alleged that Walmart "knew, or should have known, that there existed a defective bench that was not suitable for customer use," but took "no action to correct the defective bench's condition." Dkt. 1-2 ¶ 21. Tyree alleged this bench presented an "unreasonably dangerous" condition for invitees. *Id.* Moreover, he alleged that Walmart had a duty to "use reasonable care to monitor, to inspect, and to maintain the property and its equipment and furniture," such that it is "in a reasonably safe condition for use of the invitees." *Id.* ¶ 23. Tyree alleged that Walmart failed to do so. *Id.* ¶ 24. Thus, Tyree alleged that the Walmart defendants were "jointly and severally negligent in that they (a) failed to warn or advise the Plaintiff or the public of the defective bench; (b) failed to monitor the structural integrity of the bench in order to assure its safety by invitees; [and] (c) failed to maintain the publicly accessible bench in order to assure safety." *Id.* ¶ 25. Tyree demanded a jury trial and sought $2.5 million in damages.

Walmart filed an answer followed by a notice of removal to this Court in March 2019. Dkt. 1. Walmart did not file a motion to dismiss. Rather, Walmart filed a motion for summary judgment, which has been fully briefed and the Court heard argument on the motion.

<u>Standard of Review</u>

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists only where the record, taken as a whole, could lead a reasonable jury to return a verdict in favor of the nonmoving party. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009). In making that determination, the Court must take "the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc).

A party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Moreover, "[t]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247–48. Instead, the non-moving party must produce "significantly probative" evidence from which a reasonable jury could return a verdict in his favor. *Abcor Corp. v. AM Int'l, Inc.*, 916 F.2d 924, 930 (4th Cir. 1990) (quoting *Anderson*, 477 U.S. at 249–50).

<u>Reasoning</u>

The applicable legal principles in Virginia are not in dispute.[1] In *Winn-Dixie Stores, Inc. v. Parker*, 396 S.E.2d 649 (Va. 1990), which is cited by both parties, the Supreme Court of Virginia stated:

> The rules applicable to slip-and-fall cases are well settled. The store owner owed the customer the duty to exercise ordinary care toward her as its invitee upon its premises. In carrying out this duty it was required to have the premises in a reasonably safe condition for her visit; to remove, within a reasonable time, foreign objects from its floors which it may have placed there or which it knew, or should have known, that other persons had placed there; to warn the customer of the unsafe condition if it was unknown to her, but was, or should have been, known to the store owner.

*Id.* at 650 (cleaned up). However, that does not mean that a store owner is "an insurer of the safety of the premises." *Gauldin v. Virginia Winn-Dixie, Inc*., 370 F.2d 167, 169 (4th Cir. 1966) (citing Virginia precedent). Accordingly, to establish a claim of premises liability, "an injured invitee must show that the owner had knowledge, actual or constructive, that a defect existed and that such

---

[1] The parties agree that Virginia's premises liability law applies. Def's Br. at 6; Pl's Opp. Br. at 5–6 (similar).

defect created an unsafe condition." *Roll 'R' Way Rinks, Inc. v. Smith*, 237 S.E.2d 157, 161 (Va. 1977).

Walmart does not dispute that it owed Tyree a duty, nor that Tyree suffered injuries as a result of the incident. Dkt. 20 ("Def's Br.") at 7. Rather, Walmart argues that Tyree has not adduced evidence to establish three elements of a prima facie case of negligence: (1) the bench at issue constituted a dangerous condition; (2) the dangerous condition proximately caused the accident to happen; or (3) Walmart had actual or constructive notice of the dangerous condition and failed to correct the problem within a reasonable period of time or to notify the plaintiff. Def's Br. at 7. Because Tyree has not presented facts from which a reasonable jury could conclude that Walmart had actual or constructive notice of any dangerous condition, the Court need not address Walmart's other arguments.

"In premises liability cases, the plaintiff must introduce evidence of the responsible person's actual or constructive knowledge of a defective condition on the premises to establish a prima facie case of negligence." *Grim v. Rahe, Inc*., 434 S.E.2d 888, 889 (Va. 1993). "Constructive knowledge or notice of a defective condition of a premise or a fixture may be shown by evidence that the defect was noticeable and had existed for a sufficient length of time to charge its possessor with notice of its defective condition." *Id.* at 890. Said another way, "[w]hen … the dangerous condition resulted from passive conduct, the plaintiff may prevail only if he shows that 'defendants had actual or constructive notice' of the dangerous condition." *Turley v. Costco Wholesale Corp*., 220 F. App'x 179, 181 (4th Cir. 2001) (quoting *Ashby v. Faison & Assoc., Inc*., 440 S.E.2d 603, 605 (Va. 1994)).

Tyree argues that "a reasonable jury could conclude, based on reasonable inferences, that the collapse or failure of the bench was foreseeable." Dkt. 22 ("Pl's Opp. Br.") at 9. Tyree asserts

that the morning of the day the bench collapsed, Leffler "made specific note of the bench's odd physical appearance. She felt the need to test the bench's integrity by pressing on it but did not bother to determine what was actually wrong with the bench." *Id.*

Tyree argues that these actions "stand out" considering the fact that Walmart had "no policy of regularly monitoring or inspecting the furniture and fixtures," but rather relies on employees "to note, and report or remove any furniture or other fixtures in need of maintenance, service, or repair." *Id.* at 10. Accordingly, Tyree contends that, "[a]gainst this backdrop, it would be reasonable to conclude that Wal-Mart, through its employee, was aware, at least hours in advance of the Plaintiff's injury, of facts which should have alerted it to the potential danger posed by the bench." *Id.*

The evidence on this issue taken in the light most favorable to Tyree as the non-moving party, on the issue of prior actual or constructive notice is as follows. Leffler did notice earlier that day that something about the bench "didn't look exactly right," as it looked like there was a "shadow" across the bench. Dkt. 22-2 at 32. She testified she thought it was a shadow or "wanted to make sure it was a shadow." Leffler Dep. at 15. Or she thought the bench could have had "dirt or something on it." *Id.* at 13. She "rubbed [her] hand across it," and "put some pressure on it," pressing "a little hard." *Id.* at 14, 15. It "didn't even cross [her] mind" whether the bench was sound, and she was satisfied that she "didn't think it looked strange enough to do anything about" further. *Id.* at 16, 17.

Tyree has not raised a genuine issue of material fact based upon this evidence that Walmart "had actual or constructive notice, that is, whether they knew or should have known about the presence of the hazardous condition that caused the plaintiff's fall and failed to remove it within a reasonable amount of time or warn of its presence." *Logan v. Boddie-Noell Enters., Inc.*, No. 4:11-

cv-8, 2012 WL 135284, at *5 (W.D. Va. Jan. 18, 2012) (Kiser, J.) (citing *Harrison v. The Kroger Co.*, 737 F. Supp. 2d 554, 557 (W.D. Va. 2010) (Urbanski, M.J.)). Indeed, there is no evidence in the record that Leffler knew or had reason to believe there was anything dangerous or hazardous at all about the bench. A shadow or discoloration does not, without more, indicate a structural deficiency. For example, there was no testimony or evidence in the record that Leffler felt the bench "give" when she applied pressure to it, or that she was concerned about sitting on the bench. The only concern she expressed was that someone might get dirt on their pants. Or she thought it may have been a shadow. Her testimony and the evidence is thoroughly consistent on that point. And no reasonable inference can be drawn from such evidence that seeing what appeared to be a shadow or dirt or a bench put Walmart or any of its employees on constructive notice of a structural deficiency, or a hazard in the bench. Nor is there any testimony or evidence in the record about any prior incidents where this type of bench or others collapsed or needed repair. Further still, Tyree and his wife both testified that they did not see anything unusual about the bench, and that it did not appear to be sagging.

This lack of evidence concerning knowledge of a dangerous condition contrasts this case with several identified by Tyree. For example, *O'Brien v. Everfast, Inc.*, 491 S.E.2d 712 (Va. 1997), was a premises liability case brought by a customer against a fabric store owner, when the customer was injured when a heavy bolt of fabric that was leaning against a cutting table fell onto her. The court ruled in the plaintiff's favor because Everfast was "clearly aware of the danger presented by having the bolts off the racks and required its employees to take charge of the bolts when they were removed from the racks for measuring and cutting." *Id.* at 715. However, in that case, the salesperson testified "that she was aware of Everfast's policy that she was not to lean

bolts against the cutting tables," and that this policy was "[f]or safety and to keep the store neat.'" *Id.* at 714.

Tyree cites cases involving a foreseeability of injury standard that are distinguishable and apply to claims where a premise's owner's affirmative conduct itself caused the unsafe condition. In cases where "the premises owner's *own affirmative conduct causes the unsafe condition*, notice of the condition is imputed to the owner provided the danger is reasonably foreseeable." *Logan*, 2012 WL 135284, at *5 (citing *Harrison*, 737 F. Supp. 2d at 557) (emphasis added). However, this is not a case where Walmart's affirmative conduct caused the unsafe condition. *Compare, e.g.*, *Memco Stores, Inc. v. Yeatman*, 348 S.E.2d. 228 (Va. 1986) (applying foreseeability standard to Memco's action in moving plant inside to display, which shed slippery leaves upon which plaintiff slipped); *Holcomb v. Nationsbanc Fin. Servs. Corp.*, 450 S.E.2d 158, 160 (Va. 1994) (holding that the defendant breached its duty of care and "created a hazardous condition on its premises" by storing large, bathroom partitions by leaning them against a bathroom wall, which fell on and injured an employee). By contrast, where, as here, the contention is that a store-owner "*fails to remove or warn of the dangerous condition* … the relevant standard is whether the defendants had actual or constructive notice, that is whether they knew or should have known about the presence of the hazardous condition that caused the plaintiff's fall and failed to remove it within a reasonable amount of time or warn of its presence." *See Logan*, 2012 WL 135284, at *5 (citing *Harrison*, 737 F. Supp. 2d at 557) (emphasis added).[2]

---

[2] Tyree also relies in *Goehler v. Wal-Mart Stores*, 2000 WL 1161700 (4th Cir. Aug. 17, 2000), in which the court held that the plaintiff established a prima facie case of negligence when the plaintiff produced evidence that Walmart put soap dispensers positioned over the floor rather than over the sink. The court held that a reasonable juror "could find that Wal-Mart had constructive notice of the danger of soap leaking onto the floor, and that this danger was foreseeable as a result of the location of the soap dispenser." *Id.* at *2. But again, in that case, defendant's "affirmative conduct" was the "genesis" of the dangerous condition, *see Smith v.*

Tyree also argues that Leffler's "actions stand out because Wal-Mart has no policy of regularly monitoring or inspecting the furniture and fixtures offered to the public in any formal way, but instead relies on its employees to note, and report or remove any furniture or other fixtures in need of repair." Dkt. 22 at 10. But this argument does not help Tyree in establishing that Walmart was on notice of a dangerous condition and failed to correct it. As a general matter, "private rules" like those Walmart created addressing safety issues, "are inadmissible in evidence either for or against a litigant who is not a party to such rules." *Pullen v. Nickens*, 310 S.E.2d 452, 457 (Va. 1983); *McDonald v. Wal-Mart Stores, East, L.P.*, No. 3:07-cv-425, 2008 WL 153782, at *5 (E.D. Va. Jan. 14, 2008) (Lauck, M.J.) (holding that Walmart's "policies and procedures" are "private rules," which were meant to "provide guidance for its employees" and were "unavailable to the public," including plaintiff, and thus, were "inadmissible to prove negligence or to establish the applicable standard of care"). In any event, nothing in this argument or Walmart's policy as described by Tyree provides any factual support to show that Leffler or any other Walmart employee was on notice of a dangerous condition concerning the bench.

Taking the evidence in the light most favorable to Tyree as the non-moving party, no reasonable jury could conclude that Walmart was on actual or constructive notice of a hazardous or dangerous condition with respect to the bench. Having failed to establish an element of a prima facie case of negligence under Virginia's premises liability law, the Court concludes that Walmart is entitled to summary judgment.

---

*Walgreen Co.*, No. 3:14-cv-69, 2014 WL 3891683, at * n.4 (E.D. Va. Aug. 7, 2014) (Lauck, J.) (distinguishing *Goehler* on this basis).

Conclusion

For the foregoing reasons, the Court will grant Defendants' motion for summary judgment,

Dkt. 19, and award Defendants summary judgment.

The Clerk of Court is directed to send a certified copy of this Memorandum Opinion and

the accompanying Order to all counsel of record.

Entered this __30th__ day of November, 2020.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE

12